# RUDOLPH *v.* UNITED STATES EX REL. BROSNAN.

DISTRICT OF COLUMBIA; POLICE; RELEASES; PENSIONS.

Under a statute creating a pension fund for disabled policemen, and delegating .to the commissioners of the District of Columbia, the power to determine the extent of the disability of an applicant for a pension, and to fix the pension to be paid him; and further requiring pensioners to appear at stated periods for medical examination, and empowering the commissioners, as a' result of the examination, to "determine whether the pension being paid in each case shall continue in whole or in part," the commissioners, after fixing a pension at a certain amount, have no power to reduce it without such a medical examination, upon the ground that pensioner is possessed of sufficient estate aside from the pension to support himself and his family. (Construing secs. 361–364, D. C. Rev. Stat.; act. of Congress of Feb. 25, 1885, 23 Stat. at L. 316, chap. 145, and act of Congress of May 26, 1908, 35 Stat. at L. 296, chap. 198, and citing *Macfarland* v. *Bieber*, 32 App. D. C. 522.)

No. 2553.   Submitted October 7, 1913.   Decided November 3, 1913.

HEARING on an appeal by the respondents from an order of the Supreme Court of the District of Columbia awarding a writ of mandamus to compel them to pay relator his pension.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellee, Timothy Brosnan, relator below, brought this action in the supreme court of the District of Columbia seeking a writ of mandamus to compel appellants, the commissioners of the District of Columbia, to pay him his pension, which he alleges had been unlawfully reduced from $50 per month to $1 per month.

It appears that relator was appointed a member of the police force of the District of Columbia October 7, 1865, and con-

tinued in the service until September 1, 1892, when he was retired for total disability incurred in the line of duty, with a pension of $50 per month. The disability has continued until the bringing of this action, but the commissioners, learning that relator was possessed of sufficient estate aside from the pension to support himself and his family, reduced the pension from $50 to $1 per month. From a judgment in favor of relator, the District prosecutes this appeal.

By secs. 361–364, D. C. Rev. Stat., being part of an act of Congress approved August 6, 1861 (12 Stat. at L. 325, chap. 62), a policeman's fund was created and placed at the disposal of the police board, the then governing body of the police force. It was provided by the act that, "whenever any member of the police force, in the actual discharge of his duty, shall become actually disabled, his necessary expenses, during the time of such disability, on the certificate of a competent surgeon, stating the manner, cause, and condition of the injury, and approved by the board of police, may become a charge upon the policeman's fund. But the board may discontinue such allowance for any satisfactory reason." The powers and duties of the police board were transferred to the commissioners of the District by the organic act of June 11, 1878.

By the act of Congress of February 25, 1885 (23 Stat. at L. 316, chap. 145), it was provided: "That hereafter the commissioners shall deduct $1 each month from the pay of each policeman, which sum so deducted shall be added to and form a part of the present police fund, to be invested in United States or District bonds by the Treasurer of the United States, and be held by him subject to the drafts of the commissioners for expenditures made in pursuance of law, and such expenditures shall be accounted for as required by law for other expenditures of the District; and said police fund shall be used for the relief of any policeman who, by injury received or disease contracted in line of duty, or having served not less than fifteen years, shall become so permanently disabled as to be discharged from service therefor; and in case of his death from such injury or disease, leaving a widow or children under sixteen years, for

their relief: *Provided, further,* that such relief shall not exceed for any one policeman or his family the sum of $50 per month." The power of the commissioners to regulate pensions under this act was extended by the act of May 26, 1908 (35 Stat. at L. 296, chap. 198), which provides: "That within thirty days after the passage of this act, and every two years thereafter, persons on the pension rolls in the District of Columbia for disabilities incurred while in the service of the police department or fire department of the District of Columbia, shall undergo a medical examination, and as a result of such examinations the commissioners shall determine whether the pension being paid in each case shall continue in whole or in part."

Relator was retired and pensioned under the act of 1885, and in compliance with the act of 1908, he presented himself to the examining board, who reported that this total disability still existed. Two years later, he submitted himself to a second examination, as required by law, and again his condition of total disability was found. At this examination questions were asked relator regarding his financial condition, which he refused to answer; whereupon the commissioners, upon satisfying themselves that relator was not dependent upon his pension for the support of himself and family, reduced his pension.

*Mr. Edward II. Thomas,* for the appellants:

1. The demurrer of the relator admits all the allegations of the answer of the appellants. *Washington* v. *Johnson,* 12 App. D. C. 545.

2. The fact that the money making up the policeman's fund was in part derived from deductions from relator's pay before his retirement does not give him any vested interest in the fund. *Pennis* v. *Reis,* 132 U. S. 464, 33 L. ed. 426; *Macfarland* v. *Bieber,* 32 App. D. C. 513.

Without any statutory authority, therefore, in order to comply with the intention of Congress it became the duty of the commissioners to reduce the pension in this case. *Lochren* v. *Long,* 6 App. D. C. 486.

*Mr. Francis H. Stephens* also for the appellants.

*Mr. W. Gwynn Gardiner* and *Mr. Blaine Coppinger,* for the appellee:

1. Under the act of 1885 there was no provision for the reduction of a pension payable to any policeman retired as aforesaid, and the said act of 1885, having created a pension fund, required an act of Congress to take from any policeman that pension so granted by an act of Congress. *Macfarland* v. *Bieber,* 32 App. D. C. 522.

2. A demurrer admits all allegations of fact pleaded in the answer. *Pennie* v. *Reis,* 132 U. S. 464, 33 L. ed. 426.

3. The act of February 25, 1885, created a police fund to be used for the relief of any policeman who, by injury received or disease contracted in the line of duty, or having served not less than fifteen years, shall become so permanently disabled as to be discharged from service therefor. *Rudolph* v. *United States,* 36 App. D. C. 379.

4. The police board having unanimously certified to the fact that there was no change in the physical condition of the pensioner, no power was vested in them to reduce his pension. *Macfarland* v. *Bieber,* 32 App. D. C. 513.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Counsel for the District urged that the commissioners are still invested with the authority of the old police board to discontinue an "allowance for any satisfactory reason." It is only necessary to glance at the scope of the acts to demonstrate the fallacy of this contention. The act of 1861 created a relief benefit fund for policemen temporarily disabled. Under such an act, the police board was, of necessity, vested with broad powers to determine, not only when the benefits should be bestowed, but when the bounty should terminate. It was not until the act of 1885 that provision was made for pensioning policemen for total disability. The act prescribed the power

of the commissioners in this class of cases. The power was delegated to them to determine the question of disability and fix the amount of the pension. Once fixed, the power vested in them by Congress was exhausted. A right had been granted the pensioner which Congress alone could take away. *Macfarland* v. *Bieber,* 32 App. D. C. 522. Congress, apparently appreciating that cases might arise where the disability of a pensioner would no longer exist, and that the commissioners in this class of cases had not succeeded to the powers of the old police board with respect to benefits for temporary disability, passed the act of 1908, requiring pensioners to appear at stated periods for medical examination, and empowering the commissioners, as a result of this medical examination, to "determine whether the pension being paid in each case shall continue, in whole or in part." This determination, however, must be based upon the result of the medical examination, as shown by the report of the board of examiners. It logically follows, we think, that Congress only intended to vest the commissioners with authority to interfere with a pensioner's right to his pension when it appears that the disability for which the pension was originally granted had been partly or wholly removed. The powers of the commissioners in the premises must be found clearly expressed in the statute.

It is not a condition precedent to the granting of a pension under the act of 1885 that the applicant shall be indigent. It applies to "any policeman who, by injury received or disease contracted in line of duty, or having served not less than fifteen years, shall become so permanently disabled as to be discharged from service therefor." Neither is the examination authorized by the act of 1908 a financial examination. It is a medical examination, and the power of the commissioners to reduce a pension is limited to the report of the examining board. It follows, therefore, that the commissioners cannot predicate their action upon matters not a proper subject of inquiry by the board.

The judgment is affirmed with costs.              *Affirmed.*